**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 25-cr-20348-TLP** |
| | ) | |
| **MARQUIS DAVIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

---

The United States of America, by and through D. Michael Dunavant, United States Attorney for the Western District of Tennessee and Jermal Blanchard, Assistant United States Attorney, notify the Court of the position of the United States in accordance with § 6A1.2 of the United States Sentencing Guidelines.

The attorney for the United States received and reviewed the Final Pre-sentence Investigation Report (PSR) prepared in this matter. The United States has no objection to the facts or guideline calculations contained in the PSR. The Government will call a witness and the victim to testify at the sentencing hearing. The hearing will take an estimated 90 minutes. Due to the nature and circumstances of Davis's conduct the Government will be seeking an upward variance.

**A. Factors in Support of Upward Variance**

The U.S. Probation Office has determined that Davis's total offense level calculation for Count one is 23, with criminal history category I, which corresponds to a guideline imprisonment range of 46-57 months imprisonment. PSR, Doc. 39, PageID 86. Davis is also subject to a

mandatory minimum of 120 months on count two of the indictment. *Id*. This is based on a determination that Davis's base offense level is 20 for an offense of robbery. PSR, Doc. 39, PageID 81. In addition, he is subject to the Special Offense Characteristics (+6) enhancement under U.S.S.G. §2B3.1(a) for permanent injuries or life-threatening injuries sustained by the victim. *Id*. Davis would presumably receive a three level reduction for acceptance of responsibility. PSR, Doc. 39, PageID 82. The Government agrees that the guidelines are accurately calculated; however, a guideline sentence would not reflect the serious and egregious nature and circumstances of Davis's conduct.

**a. Davis attempted first degree murder.**

As a part of their investigation, detectives with the Memphis Safe Street Task Force retrieved surveillance video of the robbery that is described in the PSR was recovered. PSR, Doc. 39, PageID 74-77. On the video, you can see the store clerk being shot in the stomach by Davis, without provocation, as he robbed the store. While the clerk was hit only once, you can hear the gun continue to click as Davis attempted to fire the firearm multiple times while pointing at the clerk; however, the firearm seemingly jams and does not fire. This occurs right after Davis had already taken money out of the register.

It is also of note that during his interview with detectives, Davis admitted that he thought he killed the victim. Davis had the presence of mind to call a family member right after his robbery but at no point did Davis call for an ambulance to aid the young lady that he'd robbed, shot, and left bleeding on the store floor.

Title 18 United States Code, Section 1111(a) states that murder is the unlawful killing of a human being with malice aforethought. Every murder …committed in the perpetration of, or attempt to perpetrate, any… robbery…is murder in the first degree. 18 U.S.C. § 1111(a).

Fortunately, the store clerk in this instance did not die; however, Davis's actions fall squarely into the category of attempted first-degree murder as the victim was shot and suffered life threatening injuries, during the robbery. Some of the victim's injuries include the removal of her spleen and she loss a portion of her pancreas. PSR, Doc. 39, PageID 77.

The U.S.S.G. provision for robbery does not allow for a cross reference to the Criminal-Attempt Murder guidelines; nevertheless, the guidelines are worth analyzing in view of Davis conduct in this matter. With the application of U.S.S.G §2A2.1(a)(1) for Attempted Murder, Davis's base offense level would start at a 33 as the object of the offense would have constituted first degree murder. He would also receive a (+4) enhancement under U.S.S.G §2A2.1(b)(1)(A), as the victim sustained life threatening bodily injury. With a Base offense level of 37 and a criminal history category of I, Davis's guideline range would be 210-262 months. It is the government's contention that the attempted murder guideline properly reflects the serious nature of Davis's offense, while his robbery guideline range of 46-57 falls short of considering the distinctive nature and characteristics of his conduct during the robbery.

**b. Danger to the community**

Davis actions are distinct from other robberies because of his actions after shooting the victim and leaving the store. Several minutes after Davis left the shopping center and before ambulances arrived to care for the seriously wounded victim, Davis returned to the shopping center. Davis was in front of Corky's BBQ, headed back to the store he'd just robbed when he encountered a few gentlemen who were walking out of Corky's after just having had lunch. These men happened to be federal law enforcement [or Memphis Safe Task Force] officers who were unaware of the robbery that had just occurred a few shops away in the shopping center. The task force officers saw Davis with a gun walking in their direction. They also saw local officers treating

the victim in front of the store. When being interviewed about the encounter, Davis stated that he racked a round in the chamber, but he heard a "misfire". PSR, Doc. 39, PageID 77. Davis also stated he thought law enforcement would shoot him in the head and get it over with. *Id*. Davis was shot by task force officers when he refused to comply with the officer's commands.

As Davis was headed back, task force officers were able to intervene before Davis could reach the store, but that was purely coincidental. Davis put the public at greater danger in returning, armed with a loaded firearm. Anytime shots are fired, it endangers the lives of anyone nearby, in particular when it's in a public place, such as a shopping center where many people are typically present. Davis endangered the lives of the task force officers, himself, and any of the other citizens who were nearby during this exchange of gunfire when Davis was shot. Furthermore, it is unclear why Davis really returned to the scene. He told detectives he went back to "check" on the victim; however, he'd already thought she was dead. *Id*. Davis's reckless and dangerous behavior further endangered the community when he returned armed to the shopping center he'd just fled after his robbery.

**c. Continual life-threatening injuries to the victim.**

Davis is subject to the Special Offense Characteristics (+6) enhancement under U.S.S.G. §2B3.1(a) for permanent injuries or life-threatening injuries sustained by the victim. PSR, Doc. 39, PageID 81. The government asserts that this enhancement doesn't adequately address the injury sustained by the victim. The victim sustained permanent injuries that have substantially weakened her immune system to the extent that the victim now has a high risk of death from something as simple as a common cold. The victim is more susceptible to getting infections and dying from those infections as her body can no longer naturally fight off infections. The victim, who before the shooting did not suffer from these conditions, now has high cholesterol, she's pre-

diabetic, and she has no natural antibodies. To put this in perspective, the victim recently injured herself just by lifting a pan while washing dishes. She had to go to the emergency room due to the injury and was reminded by physicians of her physical limitations. As a result of the shooting, the victim's injuries will continue to be life-threatening for the rest of her life. This is just the physical injury sustained by the victim and doesn't account for the mental and emotional strain it's put on her life. The government is seeking an upward variance, in part based on the victims continuous life-threatening injuries.

**B. Conclusion**

The government submits that consideration of the factors under 18 U.S.C. § 3553(a) along with the proof that will be submitted at the sentencing hearing supports an upward variance, and a guideline sentence would not be sufficient. This is based on the serious nature of this crime, the need to reflect the seriousness of the crime and promote respect for the law, the need for deterrence, the need to protect the public from future crimes of the defendant. An above guideline sentence would be sufficient but not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a).

Respectfully submitted,

D. MICHAEL DUNAVANT
UNITED STATES ATTORNEY

By: s/ Jermal Blanchard
Jermal Blanchard
Assistant United States Attorney
167 N. Main, Suite 800
Memphis, Tennessee 38103
(901) 544-4231